## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF KANSAS

| | |
|---|---|
| **PARADIGM ALLIANCE, INC.,** ) | |
| ) | |
| **Plaintiff,** ) | |
| ) | |
| **v.** ) | **Case No. 07-1121-MLB** |
| ) | |
| **CELERITAS TECHNOLOGIES, LLC** ) | |
| **and CELERITASWORKS, LLC,** ) | |
| ) | |
| **Defendants.** ) | |
| ) | |
| ) | |

## MEMORANDUM AND ORDER

This matter is before the court on the following motions:

    1. Defendants' motion for leave to file an amended answer and counterclaim (Doc. 47);

    2. Defendants' motion to amend the protective order (Doc. 51); and

    3. Plaintiff's motion challenging defendants' designations (Doc. 68).

The court's rulings are set forth below.

## Background

The genesis of this lawsuit is an unsuccessful business venture. Paradigm is in the

business of developing and providing geographic information systems ("GIS") for "public

awareness" programs. Utilities and pipeline companies utilize public awareness data to

identify potential issues affected by operations within a designated geographical zone.[1] Celeritas Technologies and its affiliated company, CeleritasWorks, provide information technology ("IT") services, including application development, product engineering, and infrastructure management.[2]

Highly summarized, plaintiff alleges that Paradigm and Celeritas entered into a business relationship in October 2003 for the joint development and ownership of a "Community Awareness Cartridge," a web-based product combining Celeritas' ability to display data on the internet and Paradigm's proprietary methods for obtaining, organizing, and spatially presenting public awareness data.  In the course of developing the cartridge, the parties entered into various agreements and Paradigm provided Celeritas with confidential information.

Paradigm contends that it encountered problems with Celeritas' ability to  present Paradigm's data on the internet and ultimately terminated the relationship in May 2005.  However, in the subsequent course of developing its own web-based public awareness system (PDQweb), Paradigm discovered that Celeritas had secretly used Paradigm's confidential information to file a provisional application for a "Community Awareness Management Systems and Methods" patent.  Although the provisional application was filed

---

[1] For example, pipeline and utility companies must satisfy federal compliance regulations by identifying and/or notifying (1) affected residents and businesses, (2) emergency responders, and (3) excavators of the presence of a pipeline within their community.

[2] The two companies are collectively referred to as "Celeritas" in this opinion.

during the parties' business relationship (February 2004), only Celeritas and two Celeritas employees were listed on the patent application.  Paradigm contends that Celeritas' actions and misconduct are a (1) breach of the parties' November 2003 non-disclosure agreement; (2) breach of the January 2004 non-disclosure agreement; (3) breach of the February 2005 reseller agreement; (4) breach of a fiduciary duty and duty of good faith; (5) fraudulent promise of future events; (6) fraud by silence; (7) fraudulent inducement; (8) conversion; and (9) misappropriation of trade secrets.  Paradigm also alleges that Celeritas attempted to gain unauthorized access to protected computers containing Paradigm's PDQweb product  in violation of the Computer Fraud and Abuse Act, 18 U.S.C. § 1030.

Celeritas denies Paradigm's claims and asserts counterclaims for (1) defamation; (2) tortious interference with contracts; (3) tortious interference with business expectations; (4) false advertising and commercial disparagement; and (5) breach of contract.  Additional allegations and contentions are included in the following discussion of the parties' respective motions.

### Defendants' Motion for Leave to File an
### Amended Answer and Counterclaim (Doc. 47)

Defendants move to amend their counterclaim to add (1) Ken Wilkerson as a new defendant to Celeritas' counterclaims and (2) a claim for unauthorized computer access in violation of the Computer Fraud and Abuse Act ("CFAA"), 18 U.S.C. § 1030.[3]  Paradigm does not object to the addition of Mr. Wilkerson; therefore, that portion of the motion shall be granted without further discussion.  However, as discussed in greater detail below, Paradigm opposes the addition of a CFAA claim.

Paradigm contends that defendants' attempt to add a claim under the CFAA is futile for two reasons.  First, Paradigm argues that defendants fail to allege a key element of a claim under the CFAA.  Specifically, Paradigm argues that the CFAA allows a party to bring a civil claim for unauthorized access or attempted unauthorized access of a "protected computer."  Under the CFAA, a "protected computer" is "a computer which is used in interstate or foreign commerce or communication...."  18 U.S.C. § 1830(e)(2)(B).  Because defendants' proposed amendment does not expressly allege that the computer was used in interstate commerce or communication, Paradigm argues that the proposed CFAA claim fails as a matter of law.

Paradigm's argument that the proposed amended counterclaim is futile based on defendants' failure to allege a specific element (interstate commerce or communication) is not persuasive.  "To state a claim under Fed. R. Civ. P. 8(a)(2), a plaintiff must offer a short

---

[3]

Ken Wilkerson is the president of both plaintiff and another company, GIS Edge, Inc.  Celeritas contends that Wilkerson made untrue and improper statements to a third party about Celeritas.

and plain statement of the claim that will give the defendant fair notice of what the plaintiff's claim is and the grounds upon which it rests." United Steel Workers of America v. Oregon Steel Mills, Inc., 322 F. 3d 1222, 1228 (10th Cir. 2003)(citations and internal quotations omitted).   "A plaintiff is not required to state precisely each element of the claim." Nwakpuda v. Falley's, Inc., 14 F. Supp. 2d 1213, 1216 (D. Kan. 1998).  However, Rule 8(a) "still requires minimal factual allegations on those material elements that must be proved to recover on each claim."  Id.

The court is satisfied that defendants' CFAA counterclaim provides Paradigm with "fair notice" and contains sufficient "minimal factual allegations."   The essence of defendants' CFAA claim is that Paradigm repeatedly accessed or attempted to access Celeritas' password protected "web-based" application after being told that access was no longer permitted.[4]  As a practical matter, a computer providing a "web-based" application accessible through the internet would satisfy the "interstate communication" requirement. See, e.g., Reno v. ACLU, 521 U.S. 844, 849-850 (1997)(the "internet" is an international network of interconnected computers that "enables tens of millions of people to communicate with one another and to access vast amounts of information from around the world").[5]

---

[4]

Paradigm does not have direct physical access to Celeritas' computers.  Implicit in Celeritas' amended counterclaim is that Paradigm attempted to circumvent Celeritas' password security measures and gain access to the web-based application through internet connections.

[5]

As noted in Reno, the internet is "a unique and wholly new medium of *worldwide* human communication."  Id. 521 U.S. at 850 (emphasis added).  A computer that provides access to worldwide communications would satisfy the element of *interstate* communications.

Celeritas' allegations of an internet attack on its "web-based" application provides the "minimal factual allegations" necessary to support the inference that Celeritas' computer was used in "interstate communication."[6]  Accordingly, Paradigm's assertion that the proposed counterclaim is futile for failure to allege a necessary element of a CFAA claim is rejected.

Paradigm next argues that the CFAA claim is time-barred because "[n]o action may be brought . . . unless such action is begun within 2 years of the date of the act complained of or the date of the discovery of the damage."  18 U.S.C. § 1830(g).[7]  However, Celeritas claims that it discovered the alleged computer attack by Paradigm on November 14, 2007. Paradigm counters that the allegation of recent discovery  is "suspicious" and should be rejected because Celeritas did not assert a CFAA claim until after Paradigm asserted a CFAA claim.[8]

The issue of whether Celeritas discovered the damage on November 14, 2007 is a factual matter which this court is unable to resolve in the context of a motion to amend. Accordingly, Paradigm has failed to establish as a matter of law that Celeritas' CFAA claim is time-barred and that the motion to amend is futile.  Because there are no other objections and the motion is otherwise timely, Celeritas' motion to amend shall be GRANTED.

---

[6]

    If Celeritas' factual allegations were deemed deficient, the court would allow Celeritas leave to file an amended counterclaim containing the allegation that its computer was used in interstate commerce or communication.

[7]

    The amended counterclaim alleges that the "attacks" occurred on June 21 and August 30, 2005.  Celeritas first asserted a CFAA claim on November 16, 2007.

[8]

    Paradigm filed its motion to amend to add a CFAA claim on November 16, 2007 at 5:01 p.m.  Defendants sought to add a CFAA claim on November 16, 2007 at 9:52 p.m.

**IT IS THEREFORE ORDERED** that defendants' motion to amend their answer and counterclaim **(Doc. 47)** is **GRANTED.**  Celeritas shall file their amended answer and counterclaim by **March 10, 2008** and serve Mr. Wilkerson with a copy of the  amended complaint and a summons by **March 14, 2008.**

### Defendants' Motion to Amend the Protective Order (Doc. 51)

This court previously rejected defendants' motion for a protective order prohibiting William Dakan, one of Paradigm's outside counsel, from reviewing information designated by defendants as "attorney-eyes only."  <u>Memorandum and Order</u>, Doc. 38, filed  October 2, 2007.[9]  Defendants move to amend the protective order based on new evidence that "Mr. Dakan is involved in Paradigm's business decision-making in ways that will irreconcilably threaten to disclose" sensitive business information.  Specifically, defendants argue that a recently produced email message dated February 10, 2007 reveals that Mr. Dakan *does* engage in "competitive decision making."[10]  Celeritas also argues that Mr. Dakan's earlier declaration was "incomplete and misleading."

---

[9]

Mr. Dakan is in private practice in Wichita, Kansas and has provided legal services to Paradigm since 2000 on "a variety of business issues, including corporate structure and operations, contracts, corporate governance, taxes, real estate, and employment issues." In denying defendants' previous request to prevent Mr. Dakan from reviewing discovery responses, the court rejected Celeritas' argument that Dakan was a "competitive decision maker" rather than an attorney providing routine legal advice to a business entity.  Doc. 38, p. 3.

[10]

The February 10, 2007 email is a communication from Mark Allen to other Paradigm stockholders.  Mr. Dakan was merely copied ("cc") on the email.

The court has reviewed the February 10, 2007 email and finds that defendants' arguments grossly mis-characterize the content of the email.  The email reveals that the author (Mark Allen) sent an acquisition proposal from SafetyComm to Mr. Dakan for review and comment.[11]  Mr. Dakan's review of SafetyComm's offer is entirely consistent with his earlier declaration that he provided legal advice concerning contract terms and negotiated on Paradigm's behalf.  As the court previously ruled, the mere drafting of contract terms and negotiating on behalf of a client does not elevate an attorney to the level of a "competitive decision maker."  Doc. 38, p. 3.[12]

The remaining portions of the email to other shareholders are Mr. Allen's rationale for proceeding with the acquisition.  Defendants improperly imply that Mr. Allen's comments to other Paradigm stockholders were suggested by or attributable to Mr. Dakan. The court finds no evidence in the email that Mr. Dakan was engaged as a "competitive decision maker."[13]  Because the "new evidence" is not persuasive, the court declines to

---

[11]

SafetyComm apparently provides services similar to those provided by Paradigm.

[12]

It comes as no surprise that a company considering an acquisition would (1) ask counsel to review the offer to sell and (2) assist in drafting the terms of the contract.

[13]

To the contrary, Mr. Allen qualifies his email comments by stating "Here is *my personal opinion* of the situation."  (Emphasis added).

amend the protective order as requested by defendants.[14]

**IT IS THEREFORE ORDERED** that defendants' motion to amend the protective order **(Doc. 51)** is **DENIED.**

### Paradigm's Motion Challenging Defendants' Designation of Attorneys' Eyes Only Documents (Doc. 68)[15]

The parties jointly proposed (and the court approved) a protective order which allows the parties to designate discovery materials as "confidential" or "confidential - attorneys' eyes only." Doc. 40, filed October 22, 2007.  The protective order provides, in relevant part:

> The Confidential designation shall be used for Discovery Material that the designating party reasonably believes contains, refers or could lead to the disclosure of trade secret, proprietary, commercial, business, financial, or other information that that party has an interest in protecting from unrestricted disclosure.  The Confidential - Attorneys' Eyes Only designation shall be used for Discovery Material that meets the description of Confidential Discovery Material and which the producing Party contends would be of commercial value to another or would cause competitive injury to the producing Party if such information were to be disclosed to the other Party or others.

Access to confidential - attorneys' eyes only material is limited to outside counsel and their

---

[14]     This is the second attempt by defendants to disrupt the relationship between Paradigm and its outside counsel.  In both attempts, defendants have asserted questionable arguments.  Moreover, during the most recent dispute, defense counsel referenced Rule 11 sanctions during the "meet and confer process."  Fed. Rule Civ. P. 11(d) expressly states that Rule 11 "does not apply to discovery requests, responses, objections and motions under Rule 26 through 37."  An expressed or implied threat of moving for Rule 11 sanctions in the context of a discovery dispute is improper.

[15]     Paradigm's related motion to file certain exhibits under seal **(Doc. 70)** is **GRANTED.**

staff, certain deponents, experts, court reporters, and the court.

Paragraph 7 of the protective order provides a mechanism for challenging confidential designations:

> A Party who disagrees with a designation may challenge that designation by filing a motion with this Court in the District of Kansas. . . . In defending against a challenge of its designation, the Party or Third Party who designated the challenged Discovery Material "Confidential" or "Confidential - Attorneys' Eyes Only" shall have the burden of persuading the Court.

This matter is before the court on Paradigm's motion challenging Celeritas' designation of approximately 14,000 pages of discovery material as "Confidential - Attorneys' Eyes Only ("AEO").  The parties' arguments are set forth in greater detail below.

Paradigm argues that the AEO designation is a "remarkable privilege" that should be applied to a relatively small number of highly sensitive documents and that Celeritas has abused the privilege by designating a large volume of discovery documents with the AEO designation.  Specifically, Paradigm alleges that Celeritas initially designated approximately 70% of its initial production of 40,000 pages of material as AEO.  After Paradigm complained about formatting issues and the large volume of AEO designations, Celeritas revised the format and reproduced approximately 29,000 pages of material, 23,000 of which were listed as AEO.[16]  Paradigm again voiced objections to the large volume of AEO designations and, after the meet and confer process, Celeritas agreed to remove the AEO

---

[16]    The documents were recovered from electronic storage and the initial production format included coding which made the documents extremely difficult to read.  The formatting problem was attributed to an error by the vendor who assisted in the production of electronic documents.

designation from (1) documents exchanged between the parties during the business relationship and (2) all documents created before June 2005.[17]   Notwithstanding these adjustments, Paradigm cites a number of examples of documents which continue to be designated as AEO when they obviously do not fit the definition of an AEO document.[18]

Celeritas opposes the motion, arguing that Paradigm's "general" attack on its AEO designations is a violation of the protective order and that Paradigm must list **_each_** designation that it challenges in its motion.[19]  See also Giddy Up, LLC v. Prism Graphics, Inc., 2007 WL 2460646 (N.D. Texas 2007)("implicit in this motion is the obligation of the party challenging a designation to identify the specific documents at issue so that attorneys

---

[17]    The parties' business relationship ended in June 2005.  In essence, Celeritas agreed to forego the AEO designation for documents created before the business relationship ended.  To reflect these changes, Celeritas sent a **98-page list** of bates numbers that were to be "de-designated" from AEO to "confidential."  Paradigm argues that Celeritas' failure to provide replacement documents reflecting the revised status of the documents is an unnecessary and unfair burden.  The court agrees.  Requiring Paradigm to cross-reference a 98-page list of bates-numbers to determine whether an earlier AEO designation is still applicable is unduly burdensome.  Celeritas shall provide Paradigm with a replacement set of documents showing the current designation of documents with (1) no designation, (2) a confidential designation, or (3) an AEO designation.

[18]    For example, Celeritas continues to designate e-mail messages drafted by Paradigm and sent to Celeritas as AEO.  *See*, *e.g.*, Doc. 69, Ex. J.  In response to Paradigm's motion, Celeritas now agrees that this document was incorrectly designated as AEO.  Celeritas' response brief also indicates that an additional 170 documents were mistakenly designated as AEO and will be "de-designated."  Doc. 81, p. 8.  Another example is a "Thanksgiving Greeting" email to an undisclosed addressee.  Doc. 69, Ex. CC.  Celeritas concedes that this was also an erroneous AEO designation.

[19]    Celeritas relies on the following language in the protective order to support its argument: "A Party who disagrees with **a designation** may challenge **that designation** by filing a motion. . . ." (Emphasis added).

can attempt to negotiate an acceptable resolution of the matter;" therefore, court will not entertain blanket request to reclassify all documents designated as "attorney eyes only"). The weakness in Celeritas' reliance on <u>Giddy Up, LLC</u> is that Magistrate Judge Kaplan qualified his ruling, noting that "the movant has not presented any evidence that the documents have been improperly designated." <u>Id.</u> Here, in contrast, Paradigm has presented numerous examples of improper designations.

Celeritas' suggestion that the wording of the protective order precludes any challenges except those referring to specific, "designated" documents is also not persuasive. Implicit in the protective order and its provision for designating documents as "confidential" or "AEO" is a requirement of good faith. <u>In re Ullico Inc. Litigation</u>, 237 F.R.D. 314 (D. D.C. 2006). Nothing in the protective order precludes Paradigm from asserting a lack of good faith by Celeritas in reviewing the documents and using the AEO label to impede Paradigm's case preparation.[20]

Celeritas also contends that Paradigm overstates the problem and that Celeritas has attempted to correct any problems brought to its attention. Because of it efforts to correct and resolve specific documents called to its attention, Celeritas argues that Paradigm's general attack should be rejected. Celeritas asserts that Paradigm should be required to identify the specific documents which it challenges, even if it requires Paradigm to address each of the 14,000 documents currently designated as AEO.

Celeritas' argument that it has "fixed things" brought to its attention is an inadequate

---

[20]

The AEO designation hinders outside counsel's ability to communicate with the client and imposes additional administrative burdens on the management of documents.

response to Paradigm's motion.  The duty of good faith in the protective order is a duty to review the documents in good faith **before** designating them as AEO.  However, the record before the court suggests that appropriate review was not conducted by Celeritas when it first designated large volumes of documents as AEO.  For example, in its first production of 40,000 pages, Celeritas designated such innocuous documents as (1) blank pieces of paper, (2) directions to Celeritas' office, and (3) emails prepared by Paradigm employees.[21]  In Celeritas' second effort at production, 80% of the documents (23,000) were designated as AEO.  As noted above, Paradigm objected and Celeritas again modified its AEO designations.  Notwithstanding representations by Celeritas that it conducted a second review of the documents, Celeritas now concedes in its response that other documents should not have been designated as AEO and that it has "de-designated" 170 additional documents.[22] The record simply does not support Celeritas' argument that it conducted a thorough review before designating documents as AEO.

Based on the large volume of documents inappropriately designated as AEO, the remedy must be addressed.  The specific remedies proposed by Paradigm and the court's

---

[21]
    As previously noted, approximately 70% of the 40,000 documents in the initial production were designated as AEO.

[22]
    Celeritas' response brief also suggests a misguided approach to AEO designation. Apparently, Celeritas designated entire "strings" of email messages as AEO when only one email in the string arguably contained AEO information (such as the name of a customer).  Under the circumstances, designation of the entire email string as AEO material was improper.  Similarly, Celeritas designated publicly available information as AEO merely because it was attached to an email.  An otherwise public document is not AEO material merely because it is attached to an email sent to a Celeritas' customer. Celeritas shall follow these guidelines in its review of the documents.

rulings are set forth below.

**1. An order directing Celeritas to read its own documents and justify in writing each document designated as AEO.**

Because Celeritas adopted a cavalier approach in designating large volumes of documents as AEO, the court orders that Celeritas provide Paradigm with a log explaining its justification for designating a document as AEO. Where appropriate, Celeritas may consolidate its explanations.[23]

**2. An order limiting Celeritas to designating 10% of its documents as AEO.**

Paradigm proposes that Celeritas be limited to designating only 10% of its documents as AEO and that any designations above 10% would be subject to an *in camera* review. The court declines this proposal because the record is unclear as to whether 10% is a reasonable "cutoff" percentage. Equally important, merely requiring an *in camera* review is a vague and uncertain remedy.[24]

**3. An order directing Celeritas to provide replacement copies of all documents with**

---

[23] For example, it appears that Celeritas designated many documents as AEO because the documents contained the name of a Celeritas customer. Celeritas may list all bates numbers for such documents under one heading. As an alternative, Celeritas may redact the customer name and forego the AEO designation. In any event, there must be an explanation for each document designated as AEO.

[24] The parties are admonished to review Rule 26(g) before bringing any additional disputes concerning AEO designations before the court.

**current designations of confidential or AEO.**

As previously discussed in this opinion, Celeritas' approach of submitting voluminous bates number lists of "de-designated" AEO documents is an unnecessary burden and causes great confusion.  Celeritas shall provide Paradigm with replacement copies of all documents with current designations indicating whether the document is (1) "confidential," (2) "AEO," or (3) not subject to any claim of a confidential nature.

**4. An order directing Celeritas to reimburse Paradigm for the costs associated with reviewing Celeritas' original 40,000 document production.**

The court declines this request.  The initial production suffered from a formatting problem caused by an outside vender assisting Celeritas in the production of electronically stored records.  The problem became obvious after review of a few documents and Paradigm immediately contacted Celeritas concerning the problem.  Under the circumstances, the court declines to award costs concerning the initial production of documents.

**5. A finding that Celeritas has obstructed discovery through its profligate use of the AEO designation.**

This opinion provides sufficient rationale for the court's rulings and no further comments are necessary.

**IT IS THEREFORE ORDERED** that Paradigm's motion challenging Celeritas' AEO designations (**Doc. 68**) is **GRANTED**, consistent with the rulings set forth herein. Celeritas shall provided Paradigm with the replacement documents and log discussed herein by **March 19, 2008.**

-15-

A motion for reconsideration of this order under D. Kan. Rule 7.3 is not encouraged. The standards governing motions to reconsider are well established.  A motion to reconsider is appropriate where the court has obviously misapprehended a party's position or the facts or applicable law, or where the party produces new evidence that could not have been obtained through the exercise of reasonable diligence.   Revisiting the issues already addressed is not the purpose of a motion to reconsider and advancing new arguments or supporting facts which were otherwise available for presentation when the original motion was briefed or argued is inappropriate.  <u>Comeau v. Rupp</u>, 810 F. Supp. 1172 (D. Kan. 1992). Any such motion shall not exceed three pages and shall strictly comply with the standards enunciated by the court in <u>Comeau v. Rupp</u>.  The response to any motion for reconsideration shall not exceed three pages.  No reply shall be filed.

**IT IS SO ORDERED.**

Dated at Wichita, Kansas this 28th day of February 2008.


S/ Karen M. Humphreys
_____
KAREN M. HUMPHREYS
United States Magistrate Judge