# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF KANSAS

PARADIGM ALLIANCE, INC., )
)
        Plaintiff, )
)
v. ) Case No. 07-1121-MLB
)
CELERITAS TECHNOLOGIES, LLC )
and CELERITASWORKS, LLC, )
)
        Defendants. )
)
)

## MEMORANDUM AND ORDER

This matter is before the court on the following motions:

    1. Defendants' motion to compel regarding Plaintiff's PDQ and PDQWEB products (Doc. 74);

    2. Defendants' motion to compel regarding trade secrets (Doc. 75);

    3. Plaintiff's motion to compel a response to Interrogatory No. 17 (Doc. 79):

    4. Plaintiff's motion for leave to file a surreply (Doc. 104); and

    5. The parties' joint motion to modify the scheduling order (Doc. 112).

The court's rulings are set forth below.[1]

---

[1] The background and nature of this case were described in an earlier opinion and will not be repeated except whether necessary for context. See Memorandum and Order, Doc. 117, filed February 28, 2008.

**Defendants' Motion to Compel (Doc.74)**
**and**
**Plaintiff's Motion for Leave to File a Surreply (Doc. 104)**

Defendants move to compel Paradigm to answer discovery requests concerning plaintiff's PDQ and PDQWEB products.[2] Paradigm opposes the motion, arguing that it developed these products after the parties' business relationship ended and that the discovery requests "are not relevant to any claim or defense in this case." For the reasons set forth below, the motion to compel shall be GRANTED. The motion for leave to file a surreply shall be DENIED.

Paradigm's core business is assisting pipeline, gas, and utility companies with their "public awareness programs."[3] Celeritas Technologies and its affiliated company, CeleritasWorks, provide information technology ("IT") services, including application development, product engineering, and infrastructure management.[4]

Highly summarized, plaintiff alleges that Paradigm and Celeritas entered into a business relationship in October 2003 for the joint development and ownership of a

---

[2] The motion concerns twelve requests for document production and one interrogatory. The parties address the requests collectively and do not argue the individual merits of each request.

[3] "Public awareness programs" are designed to provide information to the public concerning a utility delivery system or pipeline. For example, federal regulations require pipeline companies to provide the location of a pipeline to (1) affected residents and businesses, (2) emergency responders, and (3) excavators. Identifying the location of the pipeline and the target audience requires the creation, modification, and manipulation of large quantities of data.

[4] The two companies are collectively referred to as "Celeritas" in this opinion.

"Community Awareness Cartridge," a web-based product combining Celeritas' ability to display data on the internet and Paradigm's proprietary methods for obtaining, organizing, and spatially presenting public awareness data.  In the course of developing the cartridge, the parties entered into various agreements and Paradigm provided Celeritas with confidential information.

Paradigm contends that it encountered problems with Celeritas' ability to present Paradigm's data on the internet and ultimately terminated the relationship in May 2005. However, in the subsequent course of developing its own software (PDQ and PDQWEB) for public awareness programs, Paradigm discovered that Celeritas had secretly used Paradigm's confidential information to file a provisional application for a "Community Awareness Management Systems and Methods" patent.[5]  Although the provisional application was filed during the parties' business relationship (February 2004), only Celeritas and two Celeritas employees were listed on the patent application.  Paradigm contends that Celeritas' actions and misconduct are a (1) breach of the parties' November 2003 non-disclosure agreement; (2) breach of the January 2004 non-disclosure agreement; (3) breach of the February 2005 reseller agreement; (4) breach of a fiduciary duty and duty of good faith; (5) fraudulent promise of future events; (6) fraud by silence; (7) fraudulent inducement; (8) conversion; and (9) misappropriation of trade secrets.  Paradigm also alleges that Celeritas attempted to gain unauthorized access to protected computers containing Paradigm's PDQweb product in

---

[5] PDQ is a desk-top application that allows pipeline and utility companies to access their public awareness data.  PDQ is not available through the internet.  PDQWEB is similar in concept but internet accessible.

-3-

violation of the Computer Fraud and Abuse Act, 18 U.S.C. § 1030.

Celeritas denies Paradigm's claims and asserts counterclaims for (1) defamation; (2) tortious interference with contracts; (3) tortious interference with business expectations; (4) false advertising and commercial disparagement; and (5) breach of the parties' February 25, 2005 contract.

The dispute over defendants' requests for discovery concerning Paradigm's development of PDQ and PDQWEB turns on the issue of relevance. Paradigm contends that the discovery requests are simply not relevant. Defendants contend that discovery concerning the PDQ and PDQWEB development is relevant to (1) Paradigm's claims, (2) Celeritas' defenses, and (3) Celeritas' counterclaim for breach of contract.

The standards concerning the scope of discovery are well established. Rule 26(b)(1) provides:

> **In General.** Parties may obtain discovery regarding *any matter, not privileged, that is relevant to the claim or defense of any party*, including the existence, description, nature, custody, condition, and location of any books, documents, or other tangible things and the identity and location of persons having knowledge of any discoverable matter. For good cause, the court may order discovery of any matter relevant to the subject matter involved in the action. Relevant information need not be admissible at the trial if the discovery appears reasonably calculated to lead to the discovery of admissible evidence. *All discovery is subject to the limitations imposed by Rule 26(b)(2)(i), (ii), and (iii).* (Emphasis added).

The limitations in Rule 26(b)(2)(i), (ii), and (iii) are:

> (i) the discovery sought is unreasonably cumulative or duplicative, or is obtainable from some other source that is more convenient, less burdensome, or less expensive; (ii) the party seeking discovery has had ample opportunity by discovery in the action to obtain the information sought; or (iii) the burden or expense of the proposed discovery outweighs its likely benefit, taking into account the needs of the case, the amount in controversy, the parties'

resources, the importance of the issues at stake in the litigation, and the importance of the proposed discovery in resolving the issues.[6]

Relevance, at the discovery stage, is broadly construed and generally "a request for discovery should be considered relevant if there is 'any possibility' that the information sought may be relevant to the claim or defense of any party." Sheldon v. Vermonty, 204 F.R.D. 679, 689-90 (D. Kan. 2001)(citations omitted). When the discovery sought appears relevant on its face, the party resisting discovery has the burden of demonstrating that the requested information does not fall within the scope of discovery defined under Rule 26(b)(1). Hammond v. Lowe's Home Centers, 216 F.R.D. 666, 670 (D. Kan. 2003). Conversely, "when relevancy is not readily apparent, the party seeking discovery has the burden to show the relevancy of the request." Id. With these standards in mind, the court turns to the parties' arguments.[7]

Celeritas argues that the discovery requests concerning PDQ and PDQWEB are relevant to its counterclaim that Paradigm breached the parties' February 2005 "Reseller Agreement." Specifically, Celeritas argues that the Reseller Agreement contains a provision governing the use of each party's "confidential, proprietary or trade secret information" and

---

[6] Rule 26(b)(2) was amended effective December 1, 2006 to address electronic discovery. The limitations described in parts (i), (ii), and (iii) remain unchanged.

[7] After the threshold question of relevance has been satisfied, the analysis proceeds to whether the requested information is privileged or otherwise limited by the considerations set out in Rule 26(b)(2)(C)(i), (ii), or (iii). Because Paradigm does not argue that the discovery requests are privileged or otherwise unreasonably cumulative or burdensome under Rule 26(b)(2)(C)(i), (ii), or (iii), the court limits its analysis in this instance to the issue of relevance.

that the requests are reasonably calculated to lead to evidence that Paradigm breached the confidentiality agreement when developing PDQ and PDQWEB. Although conceding that defendants' counterclaim asserts a claim for "breach of contract," plaintiff argues that Celeritas does not specifically allege in its counterclaim that the breach was caused by the disclosure of proprietary or trade secrets.

The court is satisfied that Celeritas' discovery requests for information concerning PDQ and PDQWEB are reasonably within the realm of defendants' breach of contract counterclaim.[8] Because the court finds the requests relevant, Celeritas' motion to compel shall be GRANTED.[9]

**IT IS THEREFORE ORDERED** that defendants' motion to compel **(Doc. 74)** is **GRANTED.** Paradigm shall provide the documents requested and answer the interrogatory by **March 24, 2008.**

**IT IS FURTHER ORDERED** that plaintiff's motion for leave to file a surreply **(Doc. 104)** is **DENIED.** The court is not persuaded that defendants assert new arguments in their reply brief warranting Paradigm's surreply brief.

---

[8] Even if the allegations in Celeritas' breach of contract counterclaim were deemed too vague the court would grant Celeritas leave to amend its complaint to add additional allegations.

[9] Because Celeritas' counterclaim for breach of contract provides relevance, the court declines to address defendant's alternative arguments for relevance.

**Defendants' Second Motion to Compel (Doc. 75)**

Defendants move to compel Paradigm to provide a complete answer to Interrogatory No. 10 which asks that plaintiff

> identify what confidential information you contend constitutes a trade secret, as you use that term in Count IX of your petition.

Paradigm opposes the motion, arguing that it has answered the interrogatory. For the reasons set forth below, the motion shall be GRANTED.

As noted above, defendants asked plaintiff to identify the "trade secrets" it contends were misappropriated (Count IX). Paradigm answered Interrogatory No. 10 by stating:

> **All** information, processes, programs, know-how and insights discussed or referred to in Paradigm's Response to Interrogatory No. 7 propounded by CeleritasWorks. (Emphasis added).

Interrogatory No. 7 asked Paradigm to

> Identify any and all contributions made by Paradigm to the development of the Cartridge. Specifically identify: (a) any and all aspects of the Cartridge which you claim Paradigm invented; (b) any and all aspects of the Cartridge which you claim Paradigm developed; and (c) any and all aspects of the Cartridge which you contributed to developing.

Paradigm provided a three-page response to Interrogatory No. 7, describing in general terms Paradigm's contribution to the development of the Cartridge. Defendants move to compel more specific answers, arguing (1) the three-page answer is too vague and (2) the answer contains information that is obviously not a "trade secret." Paradigm counters that it has sufficiently answered the interrogatory but that defendants "just don't like the answer."

Paradigm's reference to its three-page answer to Interrogatory No. 7 is not an appropriate answer to Interrogatory No. 10. First, the three-page answer to Interrogatory No.

7 contains numerous generalities which do not provide sufficient specificity concerning the "trade secrets" that Paradigm contends were misappropriated.[10]  Moreover, the three-page answer contains numerous references to information that is obviously not a "trade secret."[11] Because Paradigm's answer is inadequate, defendants' motion to compel shall be granted.

**IT IS THEREFORE ORDERED** that defendants' motion to compel **(Doc. 75)** is **GRANTED.**  Paradigm shall answer Interrogatory No. 10 on or before **March 24, 2008** and set forth in specific detail the "trade secrets" allegedly misappropriated by defendants.

### Paradigm's Motion to Compel (Doc. 79)

Paradigm moves to compel defendants to properly answer Interrogatory No. 17 which asks Celeritas to

> identify all persons and/or their products Celeritas believes infringe one or more of the claims in the Patent Applications. For each infringing product, identify the claim(s) infringed.

Defendants answered the interrogatory by stating "the claims have not issued yet, so no persons or products infringe."  As explained in greater detail below, the motion to compel

---

[10] The "trade secrets" are described in such general terms that Paradigm did not seek to have its answers treated as "Confidential" or "Attorney - eyes only" pursuant to the protective order in this case.  For example, the three-page answer asserts that "Paradigm disclosed to Celeritas its proprietary processes and programs along with technical expertise and industry product knowledge."  "Proprietary processes" and "industry product knowledge" are vague and inadequate descriptions of a "trade secret" in the context of the interrogatory.

[11] For example, Paradigm's answer includes the allegation that it generated a system map and county asset report for its clients.  A map and report provided to customers in the normal course of business is not a "trade secret."

-8-

shall be GRANTED IN PART.

Paradigm asserts that defendants' interrogatory answer is in conflict with defendants' written representation to the Patent and Trademark Office (PTO) on August 24, 2006 that "[t]here is currently an infringing system actually being marketed or a method in use." (Emphasis added).[12] Paradigm requests that defendants provide the same information provided to the PTO. Defendants counter that their interrogatory answer is technically correct because the patent has not yet been issued and "no one 'infringes' a patent application until the patent is issued." However, defendants agree that they will provide the same information provided to the PTO concerning the alleged "infringer" if so ordered by the court.

Defendants' attempt to justify its interrogatory answer based on semantics is rejected. Paradigm's interrogatory asks that Celeritas identify the persons who defendants *believe* were infringing on their *patent application*. As reflected in their representation to the PTO in August 2006, defendants *believed* that someone was "infringing" on their patent application. Accordingly, this information should have been provided and Paradigm's request to compel this information shall be granted.[13]

---

[12] The representation was made in a request to the PTO to examine Celeritas' patent application before other pending applications.

[13] The parties assert additional arguments concerning the attorney-client privilege, waiver, relevance, and the scope of the interrogatory. Because the court construes the motion to compel as limited to information concerning the infringer referenced in Celeritas' August 24, 2006 request to the PTO, the court declines to address the parties' peripheral arguments.

**IT IS THEREFORE ORDERED** that Paradigm's motion to compel **(Doc. 79)** is **GRANTED IN PART.** Defendants shall answer the interrogatory by providing Paradigm with the same information concerning the alleged infringer as provided to the PTO. The answer shall be provided by **March 24, 2008.**

### Joint Motion to Amend Scheduling Order (Doc. 112)

The parties jointly move the court to amend the Scheduling Order and to conduct a conference to review the status of discovery and case management matters. The motion shall be granted and the Scheduling Order shall be amended after discussion with counsel.

**IT IS THEREFORE ORDERED** that the parties joint motion to amend the Scheduling Order **(Doc. 112)** is **GRANTED.** A status conference shall be conducted by phone on **March 28, 2008** at **10:00 a.m.** to review the status of discovery and the parties' proposed amendments to the Scheduling Order. The court will initiate the phone call. Counsel shall submit their suggested revisions to the Scheduling Order no later than **March 26, 2008.** The status conference set for **April 1, 2008** is **cancelled.**

A motion for reconsideration of this order under D. Kan. Rule 7.3 is not encouraged. The standards governing motions to reconsider are well established. A motion to reconsider is appropriate where the court has obviously misapprehended a party's position or the facts or applicable law, or where the party produces new evidence that could not have been obtained through the exercise of reasonable diligence. Revisiting the issues already

addressed is not the purpose of a motion to reconsider and advancing new arguments or supporting facts which were otherwise available for presentation when the original motion was briefed or argued is inappropriate. Comeau v. Rupp, 810 F. Supp. 1172 (D. Kan. 1992). Any such motion shall not exceed three pages and shall strictly comply with the standards enunciated by the court in Comeau v. Rupp. The response to any motion for reconsideration shall not exceed three pages. No reply shall be filed.

**IT IS SO ORDERED.**

Dated at Wichita, Kansas this 7th day of March 2008.

S/ Karen M. Humphreys
_____
KAREN M. HUMPHREYS
United States Magistrate Judge