**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS**

| | |
|---|---|
| **PARADIGM ALLIANCE, INC.,** )<br>)<br>**Plaintiff,** )<br>)<br>v. )<br>)<br>**CELERITAS TECHNOLOGIES, LLC** )<br>**and CELERITASWORKS, LLC,** )<br>)<br>**Defendants.** )<br>)<br>_____ ) | Case No. 07-1121-EFM |

## MEMORANDUM AND ORDER

This matter is before the court on the following motions:

   1. Plaintiff's motion to quash third-party subpoena (Doc. 158);

   2. Defendants' motion to file a surreply (Doc. 202);

   3. Plaintiff's motion for a protective order (Doc. 211);

   4. Defendants' motion to unseal document (Doc. 214); and

   5. Defendants' cross-motion to compel (Doc. 217).

The court's rulings are set forth below. The following background provides necessary context for the parties' discovery disputes.

### Background

This lawsuit is the result of a business relationship that failed. Paradigm Alliance, Inc.

("Paradigm") provides "public awareness" information for pipeline safety. Pipeline companies utilize public awareness data to identify individuals and entities potentially affected by pipeline operations within a designated geographical zone.[1] Celeritas Technologies LLC and CeleritasWorks LLC (collectively "Celeritas") provide information technology ("IT") services, including application development, product engineering, and infrastructure management.

Highly summarized, Paradigm alleges that in early 2001 it began exploring the possibility of making its public awareness data available to customers via the internet. In October 2003, Paradigm met Celeritas representatives at an industry convention and witnessed a demonstration of Celeritas' software products. Following the software demonstration, Paradigm's president (Mark Allen) asked whether Paradigm might work with Celeritas to develop an "application" to display Paradigm's public awareness audit documentation on the internet. Paradigm alleges that the parties subsequently entered into a business relationship in 2003 for the joint development and ownership of a "Community Awareness Cartridge," a web-based product combining Celeritas' ability to display data on the internet and Paradigm's proprietary methods for obtaining, organizing, and spatially presenting public awareness data. In the course of developing the cartridge, the parties entered into various agreements and Paradigm provided Celeritas with confidential

---

[1] Pipeline and utility companies must satisfy federal compliance regulations by identifying and/or notifying (1) affected residents and businesses, (2) emergency responders, and (3) excavators of the presence of a pipeline within their community. Paradigm helps pipeline companies meet these regulations. For example, Paradigm identifies persons living near a pipeline and mails them a safety brochure.

information.

Paradigm contends that it encountered problems with Celeritas' ability to present Paradigm's data on the internet and ultimately terminated the relationship in May 2005. However, after developing its own web-based public awareness system (PDQweb), Paradigm discovered that Celeritas had secretly used Paradigm's confidential information to file a provisional application for a "Community Awareness Management Systems and Methods" patent.  Although the provisional application was filed during the parties' business relationship (February 2004), only Celeritas and two Celeritas employees were listed on the patent application.  Celeritas is now a competitor of Paradigm, marketing its own "public awareness" program to pipeline companies.

Paradigm sues Celeritas for breach of contract, breach of fiduciary duty, fraud by promise of future events, fraud by silence, fraudulent inducement, conversion, misappropriation of trade secrets, and violation of the Computer Fraud and Abuse Act, 18 U.S.C. § 1030.  Celeritas denies that the parties were engaged in either a "joint venture" or a fiduciary relationship.  Celeritas also alleges that Paradigm engaged in a smear campaign aimed at damaging the relationship between Celeritas and current and potential customers. Celeritas asserts counterclaims for defamation, tortious interference with contracts, tortious interference with business expectations, false advertising and commercial disparagement in violation of the Lanham Act, breach of contract, and violation of the Computer Fraud and Abuse Act, 18 U.S.C. § 1030.

**Paradigm's Motion to Quash Third-Party Subpoena (Doc. 158)**

Paradigm moves to quash a document subpoena served by defendants on Accudata Holdings, Inc. ("Accudata"), arguing that (1) the subpoena is procedurally defective and violates a court order requiring Celeritas to provide Paradigm with an advance copy of any document subpoena served on a third-party and (2) requests highly sensitive and confidential documents that have no relevance to the claims or defenses in this case. For the reasons set forth below, the subpoena shall be quashed.

As noted above, Paradigm and Celeritas formerly worked together but are now competitors. The ongoing competition and the circumstances giving rise to the lawsuit and counterclaims have intensified the parties' concerns that discovery not be utilized as a tool to misappropriate each other's confidential business information. One early example of discovery tension in this case involved defendants' failure to provide proper notice to Paradigm before serving document subpoenas on third-parties. The court granted Paradigm's motion to quash, relying on Fed. R. Civ. P. 45(b)(1) and Butler v. Biocore Med. Tech, Inc., 348 F. 3d 1163 (10th Cir. 2003). Memorandum and Order, Doc. 38, filed October 2, 2007.$^2$ To avoid further confusion or debate, the parties were ordered to "provide a minimum of five business days' notice to opposing counsel before serving a records subpoena on a non-party." Id. Notwithstanding the court's October 2 Memorandum and Order, defendants' compliance with the notice requirement is once again the subject of a

---

$^2$

In addition to citing controlling Tenth Circuit law, the court noted that Rule 45(b)(1) was amended, effective December 1, 2007, to clarify that notice must be served on the opposing party prior to service of the subpoena. Doc. 38, footnote 7.

motion to quash. This current controversy is described in greater detail below.

Accudata is one of Paradigm's key vendors and it supplies data essential to Paradigm's business. On Friday, June 27, 2008 at 3:20 p.m., defendants sent Paradigm the following email:

> Please find attached a notice copy of a subpoena to be served on Accudata ***on or around July 8, 2008.*** If you have any questions please do not hesitate to contact our office. (Emphasis added).[3]

Defendants, in fact, sent the subpoena to Accudata ***that same day*** (June 27) by Fed Ex with a cover letter containing the following comments/instructions:

> As we discussed on June 24, 2008, enclosed is a subpoena for documents relating to Accudata's dealings with The Paradigm Alliance, Inc.
>
> * * *
>
> As we discussed on the phone, my client has an important need for these documents. . . . Once we have obtained these documents from your company and have an opportunity to review them, we will also need to schedule a deposition with you and/or a corporate representative of Accudata. Accordingly we would like to obtain these documents ***as soon as possible.***
>
> * * *
>
> The subpoena's response date is July 22, 2008, however, ***we would like to begin receiving documents as soon as possible.*** Please call me, or have your company's attorney call me, at your earliest convenience so we can discuss these matters. (Emphasis added).[4]

Paradigm subsequently learned that the subpoena had been served on Accudata and immediately sent a letter to defendants demanding that the subpoena be withdrawn because

---

[3] This court views notices sent late on Friday afternoons with heightened scrutiny.

[4] Defendants did not copy Paradigm with the cover letter sent to Accudata.

-5-

(1) it violated the court's order requiring five day's notice to opposing counsel before serving a document subpoena on third-parties and (2) requested documents irrelevant to this lawsuit. Celeritas asserted that it had not violated the court's order, arguing that it had "fully followed the Judge's order that it wait five (5) days after giving notice to Paradigm to 'serve' the subpoena." Doc. 159-6, Exhibit E, p. 3.[5] However, Celeritas ultimately agreed to withdraw the subpoena and prepare a "new, narrower subpoena and restart the five (5) day notice period." Id.

On July 8, 2008, Celeritas sent Paradigm a copy of a revised subpoena. Paradigm again objected that the subpoena sought irrelevant documents. A "meet and confer" call was conducted on July 15 but no agreement was reached.

On July 17, 2008, Celeritas served its subpoena on Accudata. Paradigm reviewed the subpoena and discovered that the served subpoena differed from the subpoena previously provided to Paradigm on July 8. Paradigm asserts that the July 8 version asked for the *types* of data that Paradigm purchased from Accudata rather than the data itself. However, the subpoena *served* on Accudata requests the actual *data* purchased by Paradigm.

Defendants' explanation for serving Accudata with a different version of the subpoena is troubling.[6] First, defendant argues that the parties engaged in the "meet and confer" process and Celeritas concluded that Paradigm would object *to any* document request to

---

[5] Apparently, defendants took the position during the meet and confer process that the subpoena was not "served" because it was delivered by Fed Ex.

[6] The exhibits and parties' argument make clear that this is not a situation where, because of a clerical error, the wrong version of a document was sent.

-6-

Accudata beyond the written contract; therefore, "further discussions about the specific wording of the subpoena [were] pointless." Doc. 183, p. 9. This argument is rejected. Intentionally sending a version of a subpoena to a third-party different from that sent to opposing counsel is improper and borders on deception.[7] Whether or not Paradigm would have objected and moved for a protective order concerning the July 8 subpoena version serves as no justification for defendants' conduct.

In a related argument, defendants assert that Paradigm voiced relevance objections to the first version of the subpoena sent to Accudata on June 27 and also voiced relevance objections to the narrower requests in the second draft (sent to Paradigm on July 8). Because the issues were unresolved, defendants prepared a third version of the subpoena and served it on Accudata. Celeritas contends that it satisfied its "duty to meet and confer" under D. Kan. Rule 37.2.

The issue before the court is not whether the meet and confer requirement under the local rule has been satisfied. Rather, the issue is whether defendant served Paradigm with the same subpoena that it served on Accudata. Review of the record and exhibits before the court reveals that the July 8 subpoena disclosed to Paradigm is materially different from the subpoena served on Accudata on July 17. The fact that the parties "conferred" on July 15

---

[7]

Defendants also sent a cover letter to Accudata with instructions concerning the July 17 subpoena which purport to limit what Accudata should produce. This letter was not served on Paradigm.

The cover letter instructions are inconsistent with the wording of the July 17 subpoena. It makes little sense to change the wording of the July 8 subpoena and then send Accudata limiting instructions by a cover letter. At best, the letter appears to be an attempt to provide defendants cover for serving two different versions of the subpoena.

-7-

and were unable to resolve the discovery dispute does not justify sending a different version of the subpoena to a third party.

Equally troubling is defendants' history of ignoring and/or attempting to sidestep the prior notice requirement for document subpoenas in Fed. R. Civ. P. 45(b)(1). As noted above, the court previously quashed three subpoenas for failure to comply with the prior notice requirement in Rule 45(b)(1) (and related case law) and ordered a minimum notice to opposing counsel of five business days before serving a document subpoena. Celeritas' attempt to skirt the rule by sending the subpoena to Accudata by Fed Ex and then claiming that the subpoena was not "served" is, at best, a "sharp" practice bordering on unprofessional conduct. Moreover, the June 27 cover letter to Accudata requesting production of the documents "as soon as possible" undercuts any suggestion that Celeritas intended to provide Paradigm with fair notice before Accudata began producing documents.

Celeritas intentionally served a version of the subpoena on Accudata on July 17 which was different from the one sent to Paradigm on July 8, a violation of the notice requirement in Rule 45(b)(1). Accordingly, Paradigm's motion to quash shall be granted.[8]

**IT IS THEREFORE ORDERED** that Paradigm's motion to quash third-party subpoena **(Doc. 158)** is **GRANTED.**

---

[8] Because the motion to quash is granted based on defendants' discovery misconduct, the parties' relevance arguments are moot.

### Celeritas' Motion to File a Surreply (Doc. 202)

Defendants move to file a surreply to the motion to quash, arguing that recent deposition testimony by Ken Wilkerson, Paradigm's co-owner, provides additional evidence concerning the relevance of the *data* sought by the subpoena served on Accudata. Paradigm opposes the motion arguing that defendants have not shown sufficient reason for the filing of a surreply. Because the court has granted the motion to quash based on Celeritas' discovery misconduct, supplemental arguments concerning relevance serve no purpose. Accordingly, Celeritas' motion shall be DENIED.

**IT IS THEREFORE ORDERED** that Celeritas' motion to file a surreply **(Doc. 202)** is **DENIED.**

### Paradigm's Motion for a Protective Order (Doc. 211) and Celeritas' Cross-Motion to Compel (Doc. 217)

On August 14, 2008, Celeritas deposed one of Paradigm's attorneys, Bill Dakan. Paradigm objected to certain questions and moves for a protective order. Celeritas counters with a cross-motion to compel. For the reasons set forth below, the motions shall be GRANTED IN PART and DENIED IN PART.

As noted above, one of the central issues in this case is whether a joint venture existed between Paradigm and Celeritas. Celeritas contends that written evidence demonstrates that a joint venture was never contemplated or intended by the parties, citing the parties'

December 2004 "Reseller Agreement."[9] Paradigm counters that a joint venture existed prior to execution of the Reseller Agreement. Accordingly, events leading up to the December 2004 Reseller Agreement are relevant to one of the central issues in this case.

Bill Dakan is an attorney in private practice in Wichita who provides "corporate" legal services to Paradigm, such as drafting contracts and proposed agreements. [10] Mr. Dakan participated in at least one discussion between Mark Allen, Paradigm's President, and Brett Lester, Celeritas' President. In addition, Mr. Dakan drafted a "Service Agreement" in May 2004 based on an outline created by Allen and Lester. Although the service agreement was never executed, Celeritas contends that it also shows that the parties did not intend a joint venture.

Because Mr. Dakan was involved in the negotiations, he is a fact witness about what occurred in 2004. As noted above, he was deposed on August 14, 2008 and, in addition to factual questions, Celeritas asked Dakan for legal opinions. Paradigm's counsel objected to questions asking for legal opinions and instructed him not to answer.

The deposition was continued and Paradigm seeks a protective order "prohibiting Celeritas from soliciting Mr. Dakan's expert legal opinions and thoughts about this case." (Doc. 211, p. 2). Celeritas moves to compel, arguing that Paradigm's instruction not to answer violates deposition guidelines for this district. Celeritas also argues that the questions

---

[9] The Reseller Agreement apparently provides that the parties are independent contractors and not engaged in a joint venture.

[10] Mr. Dakan is also intimately involved in this litigation and has assisted Paradigm's trial counsel throughout this case.

-10-

sought relevant information and were otherwise proper.

Paradigm relies on a line of cases adopting the Eighth Circuit's analysis in <u>Shelton v. American Motors v. American Motors Corp.</u>, 805 F.2d 1323 (8th Cir. 1996), to determine whether the deposition of opposing counsel should be permitted.  <u>See</u>, <u>e.g.</u>, <u>Continental Coal, Inc. v. Cunningham</u>, No. 06-2122, 2008 WL 145245, *2 (D. Kan. January 14, 2008)(applying the "Shelton" factors).  Because *taking* the deposition of opposing counsel (1) disrupts the adversarial system, (2) lowers the standards of the profession, and (3) adds to the already burdensome time and costs of litigation, the Eighth Circuit held that the deposition of opposing counsel should be limited to circumstances where:  (1) no other means exist to obtain the information than to depose opposing counsel; (2) the information sought is relevant and nonprivileged; and (3) the information is crucial to the preparation of the case.  <u>Shelton</u>, 805 F.2d at 1327.

Mr. Dakan has been deposed by agreement of the parties in this case.  Thus, the reasons cited by the Eighth Circuit for limiting the deposition of opposing counsel (disruption, professionalism, and cost) do not apply in this context.  Contrary to Paradigm's arguments, <u>Shelton</u> does not provide a valid legal reason for Mr. Dakan's refusal to answer deposition questions.

Paradigm also argues that Celeritas is not entitled to query Mr. Dakan for general legal opinions. The court agrees. For example, Celeritas asked Dakan: "Are there disadvantages to entering into a partnership structure as opposed to a corporation?"  The relevance of this question to the issues in this case is not readily apparent.  If Celeritas desires a primer on general business structures, it can retain its own expert.  The court will not require Mr. Dakan

-11-

to express legal opinions on topics having little or no relevance to the issues in this case.

Paradigm also argues that Mr. Dakan's legal opinions are protected by the work-product doctrine. Specifically, Paradigm argues that Dakan has been intimately involved in this case and that the "voluminous discovery, issues, and arguments in this case have undeniably shaped Mr. Dakan's opinions and either confirmed or weakened his conviction in them." (Doc. 212, p. 9). To require Mr. Dakan to express his current views would disclose his mental impressions of the case.

The court agrees with Paradigm's argument in part and will not require Mr. Dakan to answer questions about his *current* legal opinions or impressions. However, Celeritas may inquire as to Mr. Dakan's views and understanding *in 2004* of the document he drafted. For example, Celeritas asked: "do you believe that [the service agreement] is a partnership agreement?" An answer reflecting his *current* opinion would include information protected by the work product doctrine. However, asking Mr. Dakan whether he believed *in 2004* that the service agreement he drafted was a partnership agreement is proper because it is a factual question untainted by discovery in this case.

The deposition questions presented in the parties' briefs contain similar ambiguities concerning the relevant time frame. The court will not address each question individually but summarizes the ruling as follows: Paradigm's request for a protective order concerning "general" legal opinions is sustained. However, a question asking Mr. Dakan to explain what he intended in 2004 when he drafted the service agreement is not a "general legal" opinion and shall be answered. Questions concerning Mr. Dakan's *current* views and opinions involve attorney work product and need not be answered.

**IT IS THEREFORE ORDERED** that Paradigm's motion for a protective order **(Doc. 211)** is **GRANTED IN PART** and **DENIED IN PART.** Celeritas' motion to compel **(Doc. 217)** is similarly **GRANTED IN PART** and **DENIED IN PART**, consistent with the rulings expressed herein.

### Celeritas' Motion to Unseal Document (Doc. 214)

Pursuant to the protective order in this case, Paradigm designated its contract with its data provider as "confidential." Celeritas moves to remove the "confidential" designation. For the reasons set forth below, the motion shall be GRANTED.

The document in dispute is the master data-use agreement between Paradigm and Accudata, dated January 12, 2004. The agreement sets forth the general provisions for Paradigm (and its customers) use of the data. Celeritas raises three basic arguments in support of its motion. First, the contract contains restrictions which expose Celeritas and its customers to potential legal problems for misuse of the data in connection with Celeritas' Community Awareness Cartridge. Second, the nature of the contract does not warrant confidentiality. Finally, Celeritas argues that the contract should be unsealed for use in two upcoming depositions.

The court has reviewed the contract and is not persuaded that the information contained therein warrants a "confidential" designation. The document was created in 2004 and appears to be a boilerplate contract from Accudata. Moreover, the contract itself contains no indication that the terms are to be remain secret or confidential and Paradigm has already conveyed information in the contract (restrictions on the use of data) to its customers.

-13-

Accordingly, Celeritas' motion shall be GRANTED.

**IT IS THEREFORE ORDERED** that Celeritas' motion to "free the Paradigm data contract from confidential status" **(Doc. 214)** is **GRANTED.**

A motion for reconsideration of this order under D. Kan. Rule 7.3 is not encouraged. The standards governing motions to reconsider are well established. A motion to reconsider is appropriate where the court has obviously misapprehended a party's position or the facts or applicable law, or where the party produces new evidence that could not have been obtained through the exercise of reasonable diligence. Revisiting the issues already addressed is not the purpose of a motion to reconsider and advancing new arguments or supporting facts which were otherwise available for presentation when the original motion was briefed or argued is inappropriate. Comeau v. Rupp, 810 F. Supp. 1172 (D. Kan. 1992). Any such motion shall not exceed three pages and shall strictly comply with the standards enunciated by the court in Comeau v. Rupp. The response to any motion for reconsideration shall not exceed three pages. No reply shall be filed.

**IT IS SO ORDERED.**

Dated at Wichita, Kansas this 12th day of November 2008.

S/ Karen M. Humphreys
_____
KAREN M. HUMPHREYS
United States Magistrate Judge