# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF KANSAS

THE PARADIGM ALLIANCE, INC.,

    *Plaintiff/Counterclaim Defendant*,

vs.

CELERITAS TECHNOLOGIES, LLC, and
CELERITASWORKS, LLC

    *Defendant/Counterclaim Plaintiff,*

vs.

KEN WILKERSON,

    *Third Party Defendant.*

Case No. 07-1121-EFM

## MEMORANDUM AND ORDER

Plaintiff The Paradigm Alliance, Inc. ("Paradigm") commenced this action as a result of a failed business venture with Defendants Celeritas Technologies, LLC and Celeritasworks, LLC (collectively "Celeritas"). Paradigm produces geographic information systems (GIS) that provide public awareness information for pipeline safety. Utilities and pipeline companies utilize public awareness data to identify those who may be affected by operations within a designated geographical zone, thereby allowing them to identify and notify affected residences and businesses, emergency responders, or excavators to the presence of the pipeline within their respective

boundaries in compliance with federal regulations. Celeritas provides Information technology (IT) services, including application development and infrastructure management.

The Court has previously written a number of orders in this case that set forth the factual background of the parties' claims. The Court incorporates this factual background to the extent it is relevant to the instant motion. For its claims, Paradigm is seeking damages for lost profits based upon lost opportunity. Specifically, Paradigm seeks lost profits from its lost opportunity of developing and marketing a cartridge-equivalent product, which Paradigm claims it would have completed had it not been for the business relationship it entered into with Celeritas–a relationship Paradigm claims it would not have entered into had it known of Celeritas' fraudulent intent.

Paradigm retained David J. Ward, a forensic economist with a Ph.D. in finance, to calculate its lost damages based upon lost opportunity. Dr. Ward completed his expert report in which he determined that Paradigm suffered $1,101,205 in lost profits from not having the opportunity to develop and sell a cartridge-equivalent product during the period 2005 to 2007. Celeritas seeks to exclude Dr. Ward's testimony, arguing that the methods he used in determining loss were neither generally accepted nor reliable, and were not based on sufficient or reliable facts.

The instant motion came before the Court for hearing on November 13, 2009, in which the Court heard argument along with the testimony of Dr. Ward, and Celeritas' rebuttal expert, Don Wingler. Paradigm appeared through counsel, William R. Sampson, Michael S. Cargnel, and Brian P. Baggott. Celeritas appeared through their corporate representative, Robert Cossins, and through counsel, Bernard J. Rhodes and James Moloney. After hearing the testimony and arguments presented during the hearing, and after reviewing the briefing of the parties, the Court concludes that, based on the following, Celeritas' motion should be denied.

## I. Standard

The Court has broad discretion in deciding whether to admit expert testimony.[1] Fed. R. Evid. 702 provides that a witness who is qualified by knowledge, skill, experience, training, or education may testify in the form of opinion or otherwise as to scientific, technical, or other specialized knowledge if such testimony will assist the trier of fact to understand the evidence or to determine a fact in issue.[2] The witness may testify as to this opinion "if (1) the testimony is based upon sufficient facts or data, (2) the testimony is the product of reliable principles and methods, and (3) the witness has applied the principles and methods reliably to the facts of the case."[3]

The proponent of expert testimony must show "a grounding in the methods and procedures of science which must be based on actual knowledge and not subjective belief or unaccepted speculation."[4] To determine whether an expert opinion is admissible, the Court performs a two-step analysis. "[A] district court must [first] determine if the expert's proffered testimony . . . has 'a reliable basis in the knowledge and experience of his discipline.'"[5] Second, the district court must further inquire into whether the proposed testimony is sufficiently "relevant to the task at hand."[6]

---

[1] *Kieffer v. Weston Land, Inc.*, 90 F.3d 1496, 1499 (10th Cir. 1996).

[2] Fed. R. Evid. 702.

[3] *Id.*

[4] *Mitchell v. Gencorp Inc.*, 165 F.3d 778, 780 (10th Cir. 1999).

[5] *Norris v. Baxter Healthcare Corp.*, 397 F.3d 878, 884 (10th Cir. 2005) (quoting *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579, 592 (1993)).

[6] *Id.* (quoting *Daubert*, 509 U.S. at 597).

An expert opinion "must be based on facts which enable [him] to express a reasonably accurate conclusion as opposed to conjecture or speculation . . . [but] absolute certainty is not required."[7]

> The plaintiff need not prove that the expert is undisputably correct or that the expert's theory is "generally accepted" in the scientific community. Instead, the plaintiff must show that the method employed by the expert in reaching the conclusion is scientifically sound and that the opinion is based on facts which sufficiently satisfy Rule 702's reliability.[8]

*Daubert* sets forth a non-exhaustive list of four factors that the trial court may consider when conducting its inquiry under Rule 702: (1) whether the theory used can be and has been tested; (2) whether it has been subjected to peer review and publication; (3) the known or potential rate of error; and (4) general acceptance in the scientific community.[9] These factors may or may not be pertinent, depending on the nature of a particular issue, the expert's particular expertise, and the subject of the expert's testimony; however, the Court may consider these factors where they are a reasonable measure of reliability, which is a consideration the Court has broad latitude to determine.[10]

## II. Discussion

Celeritas contends that the Court should exclude Dr. Ward's testimony because the methods he used are unreliable and have not been generally accepted. Celeritas also argues that Dr. Ward's testimony and conclusions are based on insufficient and unreliable facts, and faulty assumptions, thereby warranting exclusion. Paradigm disagrees, and asserts that Dr. Ward's methods are

---

[7]*Dodge v. Cotter Corp.*, 328 F.3d 1212, 1222 (10th Cir. 2003).

[8]*Bitler v. A.O. Smith Corp.*, 400 F.3d 1227, 1233 (10th Cir. 2004).

[9]*Daubert*, 509 U.S. at 593-94.

[10]*Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 153 (1999).

-4-

appropriate under the facts of this case. Paradigm further suggests that Celeritas' arguments go to the weight of Dr. Ward's opinion rather than to its admissibility.

During the hearing, Dr. Ward testified as to the assumptions he reached from information provided to him by Paradigm, and described the steps he took to determine Paradigm's loss of profit based on loss of opportunity. Highly summarized, Dr. Ward testified that he adopted an approach that identified sales revenues for the period of 2005 through 2007 using Celeritas' sales revenues. Dr. Ward used Celeritas' sales revenue because this revenue was generated from sales of the cartridge in the marketplace that Paradigm contends it would have realized on a cartridge-equivalent product during the same period. Dr. Ward adjusted that figure to account for marketing, management, travel, and product development costs, and explained his methods for obtaining these figures. Dr. Ward then applied that figure to Paradigm's gross profit margin. Dr. Ward explained that he used Paradigm's profit margin instead of Celeritas' because this was a lost opportunity for Paradigm. Thus, his pro forma calculations assume sales Paradigm would have generated, making their profit margin more relevant than the profit margin of a company (Celeritas) which, under this calculation, would not have been generating the sales. In addition, Dr. Ward testified why he did not consider the profitability of Paradigm's PDQWeb product. He did not consider it relevant because it was both a different product, and it was a product developed outside of the timeframe in question.[11]

During cross-examination, Celeritas' challenged Dr. Ward's expert report primarily on the assumptions he made, along with the information he was provided in reaching his conclusions, rather than the actual method he used in reaching his conclusions. And while Celeritas' challenges

---

[11] For purposes of this motion, we note that the parties take differing positions as to the comparability of Paradigm's PDQWeb product and the cartridge.

as to whether Dr. Ward's assumptions are valid may give rise to objections at trial,[12] we find that such arguments go towards the weight of Dr. Ward's opinion rather than to its admissibility for purposes of this *Daubert* hearing.

In rebuttal to Dr. Ward's testimony, Celeritas presented the testimony of Don Wingler, a certified public accountant. Mr. Wingler reviewed Dr. Ward's methods, along with the assumptions he made, and concluded that Dr. Ward's methodology, and ultimately, his conclusion, was flawed. Mr. Wingler reasoned that Dr. Ward's opinion failed to properly apply the matching principle, a basic principle under generally accepted accounting principles (GAAP), in that it failed to properly match the product's revenue to its anticipated costs. Mr. Wingler testified that the costs of Paradigm, primarily a provider of direct-mail based activities, and the revenues of Celeritas, primarily a provider of web-based services, are sufficiently unrelated so as to make any comparison unreliable. Therefore, Mr. Wingler claims that this comparison causes a fatal flaw in Dr. Ward's opinion and provides erroneous results.

The thrust of both Mr. Wingler's testimony and Celeritas' arguments was that Dr. Ward should have used Celeritas' profit margin and/or considered revenues from Paradigm's own web-based software, PDQWeb. Paradigm, however, complains that Celeritas' profit margin was not made available to them, and asserts that its PDQWeb product was sufficiently dissimilar to the Cartridge and was also developed outside the relevant time period.[13] Following this approach would have been more in line with the matching principle, thereby following GAAP. We are not

---

[12]*See* Fed. R. Evid. 702.

[13]The Court notes that Dr. Ward testified that even if Celeritas' profit margin information had been made available to him, he found it irrelevant in reaching his conclusion and would not have considered it. He also found Paradigm's PDQWeb product irrelevant to his conclusion.

convinced, however, that Dr. Ward's expert report is unreliable because of the matching principle of GAAP. Here, because Paradigm is estimating lost profits based on loss of opportunity for a product that has not been developed, such methodology used by Dr. Ward was appropriate. Dr. Ward used Celeritas' revenues from the cartridge, revenues that Paradigm presumably would have achieved had it sold a cartridge-equivalent product during the same period. Because Paradigm's costs would not be identical to Celeritas', Dr. Ward related that revenue back to Paradigm's own corporate structure to compute a more reliable revenue estimate, and thus, Celeritas' revenues were relevant to Dr. Ward's lost profit calculations.

We further conclude that the method Dr. Ward utilized in relating the income of the party which misappropriated the sale against the anticipated cost of the party, which would otherwise have made the sale, is relevant and would be helpful to a jury by giving them a sense of the losses Paradigm incurred. This is, of course, assuming that the jury accepts Dr. Ward's assumptions at trial as sufficient for reaching his conclusion. This approach has been endorsed in both financial literature and court decisions.[14]

Based on the foregoing, we conclude the Dr. Ward's expert testimony meets the standards as set forth in *Daubert*, and as a result, we deny Celeritas' motion.

---

[14] *See, e.g., Byrd's Lawn & Landscaping, Inc. v. Smith*, 542 S.E.2d 689, 693-94 (N.C. Ct. App. 2001); 1 Robert L. Dunn, *Recovery of Damages for Lost Profits* § 3.17 (6th ed. 2005).

Accordingly,

**IT IS THEREFORE ORDERED** that Defendants Celeritas Technologies, LLC and Celeritasworks, LLC's Motion to Exclude Expert Testimony of David J. Ward (Doc. 316) is hereby DENIED.

**IT IS SO ORDERED.**

Dated this 17th day of November, 2009, in Wichita, Kansas.

/s Eric F. Melgren
ERIC F. MELGREN
UNITED STATES DISTRICT JUDGE