# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF KANSAS

THE PARADIGM ALLIANCE, INC.,

    *Plaintiffs/Counterclaim Defendant*,

vs.

CELERITAS TECHNOLOGIES, LLC; and
CELERITASWORKS, LLC,

    *Defendants/Counterclaim Plaintiffs.*

Case No. 07-1121-EFM

## MEMORANDUM AND ORDER

Plaintiff The Paradigm Alliance, Inc. ("Paradigm") brought this action against Defendants Celeritas Technologies, LLC and Celeritasworks, LLC (collectively, "Celeritas") upon claims of breach of contract, breach of fiduciary duty and fair dealing arising from a joint venture business relationship, fraud by silence, conversion, misappropriation of trade secrets, and violation of the Computer Fraud and Abuse Act. Celeritas asserted counterclaims against Paradigm and against third party defendant Ken Wilkerson of defamation, tortuous interference with contracts, tortuous interference with business expectations, violation of the Lanham Act, breach of contract, and violations of the Computer Fraud and Abuse Act. Prior to trial, the Court granted summary judgment with respect to some of the parties' claims. At trial, the Court granted judgment as a

matter of law on Celeritas' remaining claims at the close of their evidence.[1]  The jury returned a verdict in Paradigm's favor with respect to the remaining claims on December 14, 2009.

On December 28, 2009, Paradigm moved for Attorneys' Fees, Costs and Expenses pursuant to Fed. R. Civ. P. 54(d)(2) and D. Kan. Rule 54.2; reserving for later the filing of its memorandum in support (Doc. 490).  Paradigm asserted that it was entitled to reasonable attorneys' fees for willful and malicious misappropriation of trade secrets, according to the Kansas Uniform Trade Secret Act;[2] to reasonable attorneys' fees for breach of the Reseller Agreements pursuant to the express terms thereof, as well as "all expenses" and "court costs" pursuant to the same.  On February 24, 2010, Paradigm filed its Statement of Consultation Regarding Its Motion for Attorneys Fees, Costs and Expenses (Doc. 528), as well as its voluminous memorandum in support with attachments.  The matter has since been extensively and exhaustively briefed, including supplements.

The parties have provided the Court with detailed billing statements, and arguments relating to various of the details.  After a few tentative dips into this deep pool of data, the Court has decided that it is not equipped to pass on the details of the bills, and through its order approve a specific amount of fees and expenses which may be awarded.  Instead, this Order will resolve the parties' disputes by subject matter, and then remand the calculation back to those who generated, and who control, the data.

---

[1] The Court's previous rulings in this case set forth the details of these matters and need not be repeated here.

[2] K.S.A. § 60-3323.

**A. Segregation of attorneys' fees between recoverable claims and non-recoverable claims**

The parties agree that Paradigm is only entitled to recover attorneys' fees due to prevailing on the misappropriation of trade secrets claim (according to state law) and on the contract claims (due to the terms of the contract). Celeritas argues that Paradigm is not entitled to recover any fees relating to its other claims, such as breach of fiduciary duty, conversion, fraud, breach of non-disclosure agreements. Celeritas also disputes Paradigm's entitlement to recover attorneys' fees relating to the litigation of the counterclaims, and for fees related to ancillary matters such as research regarding insurance coverage and judicial recusal. Celeritas particularly complains that the claims under the Computer Fraud and Abuse Act were not intertwined with the recoverable claims. Celeritas also objects to the inclusion of the patent lawyer Lujan's fees in Paradigm's claims for recovery, as well as the inclusion of Paradigm's general counsel Dakan's fees. Finally, Celeritas asserts that Paradigm's failure to segregate its voluminous and detailed billings between these various claims, but presenting its legal bills in a "block billing" format, results in none of its fees being recoverable.

Paradigm asserts that all of these claims arose from a common core of facts, and that accordingly a claim-by-claim segregation of the attorneys' fees is neither required nor possible. Even the computer hacking events related to the Computer Fraud and Abuse Act claim, Paradigm contends, arose from the same culture that resulted in the misappropriation of trade secrets, and so should be recoverable. Paradigm does concede that fees incurred in defense of the defamation counterclaim may lay outside of that common core of facts, but it argues that because only 2 of 35 depositions and 54 of 580 written requests related to that claim, a five percent reduction in the aggregated total is sufficient to account for that time,.

The Court largely agrees with Paradigm. The contract claims and the misappropriation of trade secrets claim arose from a set of facts that were inextricably intertwined, both factually and legally, with the claims for breach of fiduciary duty, conversion, fraud and breach of non-disclosure agreements. It was neither necessary nor practical for fees and expenses related to those claims to be segregated from the recoverable claims of breach of contract or misappropriation of trade secrets. The Court also agrees that ancillary matters, such as insurance coverage and judicial recusal, are matters not uncommon to litigation, and therefore, fees and expenses which Paradigm was forced to incur in defense of these claims reasonably include such collateral but related matters.

The Court also concludes that the fees for Paradigm's patent counsel Lujan, and the fees for Paradigm's general counsel Dakan, were also a part of the intertwined core of claims in this litigation, and represent matters not uncommon to such litigation, and therefore, are also reasonably included in Paradigm's recoverable fees and expenses.

The Court also agrees with Paradigm that the defense of the defamation counterclaim lies outside that common core of facts, and from the Court's own extensive involvement in the litigation, finds that Paradigm's estimated reduction of five percent of the aggregated total is a reasonable allowance for those claims.

The Court does not agree, however, with the inclusion of the Computer Fraud and Abuse Act claim in this common core. That claim was unrelated, both factually and legally, to the intertwined matters of the contract claim, the misappropriation of trade secrets claim, and the breach of fiduciary duty, conversion, fraud, and breach of non-disclosure claims. Paradigm contends that fees and expenses related to these claims should be included because the events related to these claims arose from the same culture that gave rise to the other claims, but allegations of "a common culture" does

not state a legal theory. The facts which gave rise to that claim, and the law supporting it, are dissimilar to the intertwined matters relating to the common core. Therefore, the Court concludes that fees and expenses related to those claims are not recoverable. Because Paradigm's block billing does not readily facilitate segregation of the fees and expenses related to those claims from the fees and expenses incurred with respect to the claims for which Paradigm is entitled to recover fees,[3] based on the Court's own experience and familiarity with the case and it's trial, the Court concludes that another five percent reduction in the aggregated total is a reasonable reduction for these claims.

### B. Time-keepers billed, Amount of Hours, and Hourly Rate of Fees

Paradigm's filings with this Court assert that the fees charged by its attorneys throughout the litigation of this case were as follows: lead counsel Sampson billed at rates of $500 to $525 per hour, second chair Cargnel billed at rates of $240 to $320[4] per hour, other partners and of-counsel billed at rates of $240 to $405 per hour, associate attorney Baggott billed at rates of $215 to $230 per hour, other associates billed at rates of $120 to $290 per hour, paraprofessional McNeely-LIggins billed at $155 per hour, other paralegals billed at rates of $130 to $240 per hour, litigation support staff billed at rates of $75 to $160 per hour, and Paradigm's Wichita counsel (Harper and Dakan) billed at rates of $220 to $250 per hour.[5] Paradigm provided the Court with the number of

---

[3]The Court does not agree with Celeritas' contention that the law mandates that Paradigm's use of block billing disqualifies it from recovering fees for less than all of its claims.

[4]Mr. Cargnel became a partner in his law firm during the course of this litigation, accounting for a greater range in his billing rate than exists for other professionals.

[5]Plaintiff's Memorandum in Support of its Motion for Attorney's Fees, Doc. 529, at p. 21. Although the Court takes Plaintiff at it's word that these are the rates at which Plaintiff was billed, and for which it seeks recovery, Celeritas claims in its opposition to this Motion (Doc. 556 at p. 9) that Sampson billed at rates as high as $610, Cargnel billed at rates as high as $375, Baggott billed at rates as high as $305, and McNeely-Liggins billed at rates as high as $170. As noted, the Court has declined to make a detailed audit of these billing statements, but its cursory review of the voluminous billing statements provided by Paradigm does reflect these higher rates. The Court cannot account for these discrepancies, and Plaintiff does not explain or acknowledge them. As this Memorandum will later explain, however,
(continued...)

hours billed by each time keeper at such hourly rates. Paradigm principally rests its fee request on the traditional lodestar method of time reasonably spent multiplied by a reasonable hourly rate, adjusted in the court's discretion, if appropriate, based on other factors set forth in Kansas Rule of Professional Conduct 1.5(a).[6]

Celeritas objects to virtually every aspect of Paradigm's fee statement. It objects to the Paradigm's hourly rates, and moreover, to their reliance on Kansas City rates as opposed to Wichita rates as being unreasonable.[7] It further objects to the total amount of hours billed as unreasonable and unnecessary, and objects to the large number of timekeepers, and the split of time between partners and associates as being unduly weighted towards the higher-billing partners.

Under the lodestar analysis, the Court first determines time reasonably spent. Celeritas argues at great length that Paradigm's lawyers spent excessive time on this case, complaining of duplicate staffing and other matters resulting in grossly excessive hours being spent. The Court need not assess each of these arguments specifically. The Court is familiar with the complexity of the case and the multiplication of claims and counter-claims at issue in this case. From its own experience, the Court is fully in agreement with Paradigm's argument that Celeritas' intransigence upon the pace and cost of the litigation was enormous, and that to the extent that the attorney hours expended in this case were greater than expected, it was Celeritas' own litigation conduct that drove up the amount of those hours. The Court observed Celeritas' conduct at trial, observed it in the

---

[5](...continued)
these discrepancies are not material to the Court's order herein.

[6]*See Hensely v. Eckerhart*, 461 U.S. 424 (1983); *Gigot v. Cities Serv. Oil Co.*, 241 Kan. 304, 737 P.2d 18 (1987).

[7]Celeritas provides an expert opinion as to reasonable Wichita rates.

record regarding the pretrial matters in this case, and notes that Celeritas was sanctioned for its conduct more than once. Given the extensive and unnecessary complication of this case by counsel for the Defendant, the Court cannot say that the amount of hours expended by Plaintiffs' counsel was unreasonable. The Court approves the amount of hours billed by Paradigm's counsel in this case, as modified above.

The next step in the lodestar analysis is the establishment of a reasonable hourly rate. Celeritas argues that a reasonable hourly rate must be established in reference to the relevant community, which in this case, is Wichita and not Kansas City. "To determine what constitutes a reasonable rate, the district court considers the 'prevailing market rate in the relevant community.'"[8] "Absent more unusual circumstances than we see in this case, the fee rates of the local area should be applied even when the lawyers seeking fees are from another area."[9]

Paradigm disputes that reasonable hourly rates must be established with respect to where the case is actually tried, noting that in the federal district court of Kansas a case may be tried anywhere, without regard to the parties' request. Instead, Paradigm asserts that a more equitable standard is the forum where the litigation occurred. When examining the full scope of discovery and not just the jury trial itself, it asserts that this litigation occurred in the Kansas City area every bit as much as it did in Wichita. Paradigm argues that Wichita, Kansas City and Topeka are not city states, but part of a single federal district.

Paradigm further argues that application of such a rule would impose a penalty on litigants who for reasons of their own chose to employ counsel outside of the immediate area. Paradigm

---

[8]*Lippoldt v. Cole*, 468 F.3d 1204, 1224 (10th Cir. 2006) (citing *Malloy v. Monahan*, 73 F.3d 1012,1018 (10th Cir. 1996)); *see also Blum v. Stenson*, 465 U.S. 886, 895 (1984).

[9]*Ramos v. Lamm*, 713 F.2d 546, 555 (10th Cir. 1983).

directs the Court's attention to *Gottlieb v. Barry*,[10] which notes that when the Court deems it appropriate to authorize employment of lawyers who do not office in the forum, they should not be penalized by restricting their rates to those charged locally. However, the Court does not find this case pertinent. *Gottlieb* involved eight consolidated appeals of a class action of shareholders following the collapse of a publicly traded company which manufactured computer disk drives. There, the court appointed class counsel and the other, non-court appointed counsel, ceased involvement in the litigation. In the instant case, the Court was not asked to, nor did it, appoint or approve the appointment of counsel for any of the parties. Thus, the out-of-forum counsel in this case do not come bearing the Court's prior stamp of approval as was the case in *Gottlieb*. Furthermore, the cited footnote from *Gottlieb* goes on to note that:

> In this circuit, we generally do limit the hourly rate to one "based upon the norm for comparable private firm lawyers in the area in which the court sits calculated as of the time the court awards fees" [citations omitted]. However, in an unusual case, where the prevailing party used out-of-town counsel whose rates were higher than those charged locally, we have permitted an award based on those higher rates."[11]

The Court finds instructive the contrasting reference to "lawyers in the area" and "out-of-town counsel" and believes it evidences use of a narrower geographic reference than Plaintiff would have us believe.

Paradigm also asserts that, because this was a "bet-the-company" lawsuit involving complex matters, it is reasonable to use out-of-town counsel employing (and being reimbursed for) out-of-town rates. It notes that this Court has previously approved of the use of non-local rates, citing

---

[10] 43 F.3d 474, 485 n. 8 (10th Cir. 1994).

[11] *Id.*

*Kansas Turnpike Auth. v. Morgan Guaranty Trust Co.,*[12] and *Reazin v. Blue Cross & Blue Shield, Inc.*[13] Those cases, however, are easily distinguishable from this one: in *Kansas Turnpike Authority,* the out-of-town rates were approved with respect to a New York client, and in *Reazin,* the litigation involved complex and novel anti-trust matters. As a result, those cases are inapplicable to this case.

"The establishment of hourly rates in awarding attorneys' fees is within the discretion of the trial judge who is familiar with the case and the prevailing rates in the area."[14] Paradigm is correct that the Tenth Circuit has never expressly adopted a "place of trial" standard for the establishment of attorneys fees, and this Court does not propose that it should. Nevertheless, in light of all the factors, this Court concludes that Wichita is the relevant community to reference in establishing a reasonable hourly rate.[15] This litigation was complex and contentious, but it was neither so novel nor specialized that Wichita counsel could not have reasonably been expected to be capable of providing adequate representation. It is worth noting that Paradigm filed this case in Wichita, and when the Court proposed trying it in Kansas City due to the availability of courtrooms, Paradigm strongly objected, asserting that it had the right to try the case where it had filed it; namely, Wichita. Based on the Court's familiarity with this case, and with the Wichita Bar, it concludes that for this litigation Wichita is the relevant community from which to establish a reasonably hourly rate.

Paradigm provided no evidence to the Court regarding reasonable hourly rates for Wichita counsel. Celeritas provided the expert opinion of Wichita lawyer Paul McCausland. The Court is

---

[12]751 F. Supp. 936 (D. Kan. 1990).

[13]663 F. Supp. 1360 (D. Kan. 1987).

[14]*Lucero v. City of Trinidad*, 815 F.2d 1384, 1385 (10th Cir. 1987).

[15]The Court rejects Paradigm's assertion that the entire district of Kansas, including Wichita, Topeka and Kansas City, is the relevant community, but notes that even if it adopted that argument it would not avail Plaintiff, who is expressly relying on Kansas City Missouri fee rates.

very familiar with Mr. McCausland, and finds his opinion on this matter credible. Mr. McCausland opined that the prevailing rate in this community for a senior partner such as Mr. Sampson is $300 per hour; the prevailing rate in this community for other partners is $200 to $250 per hour; the prevailing rate for associates in this community is $120 to $175 per hour, and the prevailing rate in this community for legal assistants is $60 to $95 per hour.

Accordingly, the Court finds that the reasonable hourly rates under the traditional lodestar analysis is $300 for senior partner Sampson; $175 for senior associate Cargnel and $200 for junior partner Cargnel; $175 for senior associate Baggott; $95 for assistant McNeely-Liggins; and $250 for local counsel Harper and Dakan. The Court is aware that while these individulas were the principal fee-billers in this case, several other timekeepers also billed to this case also in much smaller amounts. Those time-keepers should have their reasonable hourly rate established accordingly. The Court also recognizes that the fee request includes time billed for several support staff. Attorneys fees are calculated to include overhead, and therefore, the Court does not approve billings in any amount for support staff.

Under the lodestar analysis, the time reasonably spent multiplied by a reasonable hourly rate may, in the Court's discretion, be modified as appropriate based on the factors set forth in Kansas Rule of Professional Conduct 1.5(a) and pursuant to the *Johnson*[16] factors. In this regard, the Court notes the complexity of the issues presented (within the context of the Court's previous discussion regarding local counsel), the domination of the attorney's time precluding other engagements, the stakes involved (it was, as Plaintiff alleges, a "bet-the-company" case), the difficulty of the case due to Defendant's litigation tactics and conduct, the complexity of the legal issues (including without

---

[16]*Johnson v. Georgia Highway Exp. Inc.*, 488 F.2d 714 (5th Cir. 1974).

limitation the interrelationship of intellectual property and trade secrets with, but to exclusion of, patent law [since the Court determined that this was not, strictly speaking, a patent case]), the experience, skill and ability of the lawyers (Mr. Sampson's and Mr. Cargnel's skill in the trial of this case was particularly noteworthy), and the results obtained. Based on these factors, the Court concludes that the lodestar fee calculated for Mr. Sampson and Mr. Cargnel in accordance with this foregoing order should be increased by thirty percent and twenty-five percent respectively.

### C. Other Expenses

Plaintiffs submitted bills also include expenses for items such as computer assisted research, jury and expert consultants, deposition related expenses, expert related expenses, and trial related expenses including hotel fees. Some of these expenses are disallowed by the foregoing orders (for instance, the expert fee related to the Computer Fraud and Abuse Act claim). Celeritas complains vigorously about most of the other claims, including the fees for Floyd Nation, the patent expert. Celeritas complains that Mr. Nation gave scant testimony in the trial, which may be true, but it cannot be denied that Celeritas certainly made patent issues a predominate part of its litigation of this case, and Paradigm needed to be prepared to respond to those issues. With the exceptions noted in this paragraph, the Court does not find these expenses unreasonable and approves them.

### D. Fees and Expenses Related to Defense of the Breach of Contract Counterclaim

Counsel hired to defend the counterclaim, Sherman Taff Bangert Thomas & Coronado, has filed a Memorandum (Doc. 531) with the Court regarding its fees. The pleading is not denominated as a motion, and clearly purports to relate back to the motion filed by Paradigm's lead counsel. Celeritas objects that this request is both untimely and improper; untimely because the Counterclaim Defendant was required to file a motion for fees no later than January 14, 2010, which Celeritas

argues it did not, and improper because Counterclaim Defendant was required to segregate its fees between those incurred with respect to recoverable claims and those which were not, and it did not do so. With regard to the first allegation, Paradigm responds that it's initial, timely motions for attorneys fees included those incurred defending the counterclaims.

The Court cannot find this request for fees to have been timely made. The original motion for fees was made by "Plaintiff The Paradigm Alliance, Inc." It was filed only by counsel for Plaintiff, Shook, Hardy and Bacon and Sherwood, Harper, Dakan, Unruh and Pratt. It would unduly stretch that document to read it as also relating to counterclaim fees incurred by attorneys from a separate law firm who did not sign the timely motion. This Court has previously held in *Lintz v. American General Finance, Inc.*,[17] that a request such as this one is untimely under the rules,[18] and likewise, this request is untimely. Paradigm's arguments that its earlier pleading included these fees is unpersuasive. Therefore, the request is denied.

**IT IS THEREFORE ORDERED** that Paradigm is to revise its fee request in conformity with the foregoing, and file the same with the Court. Paradigm's filing shall disclose all assumptions or factors it relied upon to the extent they are not clearly set forth in this Memorandum and Order. Celeritas shall be given 21 days after Paradigm's revised fee request is filed in which to file any objections it may have to the same. Celeritas' objections to any matters in this Memorandum and Order shall be deemed preserved, and shall not be raised therein. If Celeritas files any objections, the Court will promptly set a hearing to resolve the same. No reply is permitted.

---

[17] 87 F. Supp. 2d 1161, 1163 n.1 (D. Kan. 2000).

[18] Fed. R. Civ. P. 54(d)(2)(B).

**IT IS SO ORDERED.**

Dated this 25th day of January, 2011.

*Eric F. Melgren*
ERIC F. MELGREN
UNITED STATES DISTRICT JUDGE